## IN THE DISTRICT COURT OF POTTAWATOMIE COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| (1) RUSSELL GAGE, as Special Administrator for the Estate of Jerry Dayle Gage, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **CASE NO.** <u>CIV-23-889-PRW</u> |
| (1) POTTAWATOMIE COUNTY PUBLIC SAFETY CENTER TRUST an Oklahoma Title 60 authority; | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| (2) BREONNA R. THOMPSON, individually and in her official capacity as Executor Director of the Pottawatomie | ) ) ) ) | **ATTORNEY LIEN CLAIMED** |
| (3) BOBBY THOMPSON, individually and in his official capacity as Captain of the Pottawatomie County Public Safety Center; | ) ) ) ) | |
| (4) BRAD BANEY, individually and in his official capacity as Lieutenant of the Pottawatomie County Public Safety Center; | ) ) ) ) | |
| (5-9) JOHN DOES (1-5), unknown individuals who were involved but not yet identified, and in their individual capacity, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

COMES NOW Plaintiff, Russell Gage, as Special Administrator of the Estate of Jerry

Dayle Gage, Deceased, by and through his attorney of record, Ronald "Skip" Kelly, and alleges

and states as follows:

## INTRODUCTION

On January 12, 2022, Oklahoma City Police arrested Mr. Jerry Dayle Gage, age 78, on a warrant issued by Pottawatomie County District Court, for Case No. CF-2019-383 for failure to appear in court. Mr. Gage was arrested at Skyview Nursing Center where he had previously been a resident. While a resident at Skyview Nursing Center, Mr. Gage suffered from infirmities. Upon his arrival at Pottawatomie County Public Safety Center, Mr. Gage was processed as a pre-trial detainee and was assigned to the trustee / work release pod. Jail personnel was made aware of Mr. Gage's medical issues January 13, 2022. Personnel became aware of Mr. Gage's deteriorating mental health as early as February 5, 2022 stating in reports that Mr. Gage seemed to lacked the ability to understand what was being communicated to him. Despite this awareness, jail personnel expected Mr. Gage to report to them whether he was experiencing a "medical emergency" while admitting that Mr. Gage "ha[d] no idea of what [they] were talking about." Mr. Gage was never referred for any sort of mental evaluation.

On March 13, 2022, Mr. Gage was housed in East Satellite, Q-Pod, Cell 2 with Mr. Blake Trojanowski, who was a pre-trial detainee with an order from the district court for a mental competency evaluation.  Mr. Gage had been moved from Q-Pod, Cell 5 into Q-Podd, Cell 5 with Mr. Trojanowski, a violent offender, in order to accommodate two  inmates from H-Pod. Mr. Gage did not have a cell mate in when he was in Cell 5. Mr. Gage was housed with Mr. Trojanowski barely 24 hours before being beaten to death. Mr. Trojanowski had been arrested October 20, 2021, for assault and battery of  a police officer.  On December 22, 2021, the district court ordered a mental health competency hearing on Mr. Trojanowski.  March 02, 2022, the mental health report determined Mr. Trojanowski competent to stand trial. His defense attorney disputed these findings and an order for competency re-evaluation was filed March 09, 2022.  Five (5) days after the order

for re-evaluation of competency, the detainee, Trojanowski, attacked and caused the death of Mr. Jerry Gage.  Mr. Trojanowski was ordered by the court to be committed to the Department of Mental Health for care and treatment on June 17, 2022.

The defendants knew that Mr. Trojanowski posed a risk of danger and intentionally placed him in general population, which ultimately caused the death of Mr. Jerry Gage. Upon full knowledge that the district court had ordered a competency evaluation on Trojanowski, the defendants had a duty to separate Mr. Trojanowski from general population into the medical or mental unit of the Pottawatomie County Public Safety Center.  Based on court appearances and court records, in which the defendants had access, they were  aware that Mr. Trojanowski suffered from serious mental illness.

Mr. Gage's death is the result of an arbitrarily capricious and reckless disregard for the safety of detainees. The defendants has had prior knowledge with issues of the Safety Center being dangerously understaffed and unsafe and has failed to classify or treat the seriously mental ill detainees.  Based on the most recent investigative reporting, since 2018, there have been seven (7) deaths in the Pottawatomie Public Safety Center.  In each of the above stated deaths, including Mr. Gage, the Safety Center has been questioned for lack of screening, proper classification, and placement.

The defendants indifferently chose not to take adequate steps to protect Mr. Jerry Gage.  The defendants deprived Mr. Gage of his rights under the United States Constitution through their knowing and deliberate indifference to a specific risk of harm and with knowledge that the risk was so substantial or pervasive that knowledge could be inferred.  Failure of the defendants to take measure in light of its knowledge, actual or inferred, created a liability for consequences of its conduct, even if said conduct is unintended.  This is a civil action for declaratory, equitable, and

damages relief pursuant to 42 U.S.C. § 1983 for Defendants' violation of Mr. Gage's rights under the Fourteenth Amendment of the United States Constitution.

Plaintiff, Russell Gage, Special Administrator on behalf of the family of Jerry Gage, has brought this suit for wrongful death against the Pottawatomie County Public Safety Center Trust, Breonna R. Thompson, Executive Director of the Pottawatomie County Public Safety Center, and other unknown employees who were involved but not yet identified and their individual capacities, for the reckless disregard of the safety of Mr. Jerry Gage.

## JURISDICTION AND VENUE

1.      This case arises under 42 U.S.C. § 1983, This Court has subject matter jurisdiction over Jerry Dayle Gage's federal civil rights claims pursuant to 28 U.S.C. §§ 1331; 1343(a)(3) and 28 U.S.C. § 2201, *et seq* under Federal Declaratory Judgment Act.

2.      Venue is proper under 28 U.S.C. § 1391 (b) because the events and omissions giving rise to this Complaint occurred in Pottawatomie County, Oklahoma.

3.      That the matter in controversy exceeds $75,000, exclusive of costs and interest.

4.      Pursuant to the Governmental Tort Claims Act, the Plaintiff submitted Notice of Tort Claim which was submitted to the Pottawatomie County Public Safety Center Trust and the Pottawatomie County Clerk on March 07, 2023.

## PARTIES

5.      The Decedent, Jerry Dayle Gage, was always material hereto, a resident of Oklahoma County, State of Oklahoma. (Plaintiff's decedent shall be referred to as "Jerry Dayle Gage" or "decedent" or "Mr. Gage.").

6.      Russell Gage is the court-appointed Special Administrator of the Estate of Jerry Dayle Gage, Deceased, by virtue of Letters of Administration issued to him in case number PB-

2022-799 in the District Court of Oklahoma County, State of Oklahoma.

7.      The Plaintiff is now and was at all times a resident of Oklahoma County, Oklahoma.

8.      The Decedent, Jerry Dayle Gage, left behind three adult sons: Russell Gage, Robby Gage, and Brandon Gage.

9.      Defendant, Pottawatomie County Public Safety Center Trust ("PCPSCTT") was established on February 4, 2002 for the use and benefit of the Beneficiary for the public purposes hereinafter set forth, under the authority of Title 60, Oklahoma Statute 1991 §§ 176-180.4. The PCPSCTT was created for the purpose of promoting, developing, owning, leasing, and financing projects or facilities, jails, or other facilities relating to the administration of justice and is obligated to comply with 57 O.S. § 41.  "Every county, by authority of the board of county commissioners and the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed."

10.      Breonna Thompson is the duly appointed Executive Director of the PCPSCT a.k.a. Pottawatomie County Jail, under the PCPSCTT, which is a Title 60 Authority.  Breonna Thompson is responsible of the operations of the facility and is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the PCPSCT.  *See Brown v. Montoya,* 662 F.3d 1152, 1163-64 (10th Cir.2011).  Defendant, Breonna Thompson, is sued in her individual and official capacity for both federal and state law claims.  At all times she was acting under the color of law and within the course and scope of her employment with the PCPSCT.

11.      Defendant, Breonna R. Thompson ("Breonna Thompson"), is, and has been at all times pertinent to this action, the Executive Director of the Pottawatomie County Public Safety Center, an Okla. Stat. tit. 19, §§ 904.1-904.10, authority, and is responsible for the operation of

the PCPSCT. Breonna Thompson is being sued in both her individual capacity and in her official capacity for acts performed while she was the Executive Director of the PCPSCT. Breonna Thompson is being sued for in her individual and official capacity for violation of Mr. Gage's rights under the 8th and 14th Amendments. Breonna Thompson, as the Executive Director and head of Pottawatomie County Public Safety Center PCPSCT at all times relevant hereto was responsible for ensuring the safety and well-being of inmates detained and housed at the PCPSCT including the provision of appropriate medical care and treatment to inmates in need of such care.  Breonna Thompson, as Executive Director, is the final policy maker for the PCPSCT and is responsible for her conduct and the conduct of her employees.  The acts, customs, policies, practices, failure to train and supervise her employees alleged herein are attributable to the County and to Breonna Thompson, in her official capacity.

12.     Defendant, Brad Baney ("Lieutenant Baney"), is, and has been at all times pertinent to this action, a resident of the state of Oklahoma and an employee with the rank of Lieutenant of the Pottawatomie County Public Safety Center. Upon information and belief, Lieutenant Baney is responsible for supervision and oversight of detention officers and staff related to inmate custody, care, control, classification and booking.  On March 13, 2022, Lieutenant Baney directed other detention officers to place the deceased, Jerry Gage, in the cell with inmate Blake Trojanowski. Lieutenant Baney was responsible for overseeing Mr. Gage's security and health and ensuring that Mr. Gage's medical and mental health needs were met. Lieutenant Baney is being sued in both his individual and official capacity for acts performed while he was the Lieutenant of the PCPSCT. At all times relevant herein, Lieutenant Baney was acting under the color of law and within the course and scope of his employment with Pottawatomie County (and/or its associated Jail Trust), State of Oklahoma.

13.     Defendant, Captain Bobby Thompson, is the second in command in the PCPSCT and has direct management over all male officers. Defendant Thompson, is commissioned to investigate and submit reports concerning all incidents of safety, threats and any physical altercations that occurs between detainees and or inmates and employees.  By and through, the known Defendants and the PCPSCT deliberately failed to take immediate action in the face of actual and constructive knowledge of constitutional violations which led to the murder of Plaintiff's decedent.

14.     The names and identities of Defendants DOES V through IV are presently unknown to Plaintiff.  Plaintiff alleges that each of Defendants DOES V through IV were employed by the PCPSCT.  Plaintiff alleges that each of Defendants DOES V through IV were deliberately indifferent to Mr. Gage's medical needs and safety, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

15.     Defendants' conduct was under color of state law within the meaning of 42 U.S.C. § 1983.

16.     By and through Defendants, Pottawatomie County deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and against Plaintiff's decedent.

17.     At all material times hereto, Jerry Dayle Gage was a resident of Oklahoma County, State of Oklahoma.

**FACTUAL BACKGROUND**

18.     Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through fifteen (17), by reference herein.

19.     Mr. Jerry Gage was arrested on January 12, 2022, by the Oklahoma City Police Department on an old failure to appear warrant issued by Pottawatomie County District Court. Claimant was placed in the custody of Pottawatomie County Public Safety Center as a pre-trial detainee, presumed innocent and was protected by the Fourteenth Amendment due process clause, and had a right to be safe while in Defendants' custody. Through booking and intake, Mr. Gage was assigned to the trustee/work release pod.  The Plaintiff is without knowledge of the number of classifications or re-classifications and cell placements of the deceased from January 12, 2022 to March 12, 2022, while in the Pottawatomie County Public Safety Center. However, the day before he was brutally beaten, ultimately to death, he was moved from his cell in East Satellite, Q-Pod, Cell 5, where he had no cell mate, to Q-Pod, Cell 2.

20.     The defendants have verified, that on March 13, 2022, the decedent was housed in East Satellite, Q-Pod, Cell 2 with pre-trial detainee inmate Trojanowski, an inmate who had been ordered by the Court on March 9, 2022, to have a Mental Health Competency Re-Evaluation and who had a public record of committing violent criminal acts.  Blake Trojanowski was a pretrial detainee who had been arrested on October 20, 2021 and was charged with assault and battery of a police officer.  Upon information and belief, on a regular basis, Trojanowski exhibited violent behavior. Upon information and belief, Trojanowski would often make violent statements to staff and was placed on suicide watch on multiple occasions.  Upon information provided, in an effort to satisfy the preferences of certain inmates, Jerry Gage was transferred at approximately 9:40 a.m., on March 13, 2022 to Q-Pod, Cell 2 with Blake Trojanowski. On March 14, 2022 at approximately 5:00 p.m., Blake Trojanowski contacted the east satellite and stated he had beat his cell mate up.

21.     On March 14, 2022, while in the custody of Pottawatomie County Safety Center,

the defendant's reported that Mr. Gage, was found lying on his back with his feet towards the door and had been severely beaten by the hands and feet of inmate Trojanowski.  The first notice that the Safety Center received about the beating was from Mr. Trojanowski, who called the satellite area via speaker/intercom and informed the officer he had beat up his cell mate. The Safety Center employees failed to perform a physical site check on Mr. Trojanowski and Mr. Gage between the hours of 1600 and 1700. Mr. Gage was beaten so severely he could not call for help.

22.    The investigators observed Mr. Gage lying on the floor of the cell, unconscious with blood spattered all over his face.

23.    The assault was severe enough that Mr. Gage was transported to OU Medical Center in Oklahoma City, where he was immediately taken to trauma surgery. He was diagnosed with several broken ribs, fracture to his left jaw, swelling to the brain, and a brain bleed.  Mr. Gage remained on life support for (13) thirteen days before succumbing to his injuries. The Medical Examiner's report states that Mr. Gage had experienced: blunt force trauma to his head and neck as indicated by scalp contusion with intracranial hemorrhages and subcutaneous hemorrhage of the neck with hyoid and laryngeal cartilage fractures; bilateral rib fractures; and, ischemic changes to his brain.

24.    On March 28, 2022, Mr. Gage passed away due to the injuries he suffered at the hands of his cellmate, Mr. Blake W. Trojanowski.

25.    At the time of Mr. Gage's death, Defendants had *de facto* policies or widespread longstanding practices or customs that resulted in: a failure to properly house individuals to ensure their safety and well-being; leaving individuals unattended in their cells for extended periods despite signs of medical or mental distress; failing to summon medical or mental health care when obviously necessary; failing to provide critical medical treatment to individuals suffering from

medical issues; and, failing to provide medical or mental health treatment to individuals suffering from mental health conditions.

26.     The Supervision Defendants had a responsibility to separate Trojanowski from the decedent by placing him in a medical or mental health unit.  The failure to take all necessary steps to protect the body integrity of the decedent constitutes deliberate indifference to the safety and welfare of the decedent and other detainees.

27.     The Supervision Defendants knew direct surveillance would be safer than less forms of supervision for inmates such as Blake Trojanowski. The defendants knew that East Satellite, Q-Pod, Cell 2, could not be observed without direct surveillance and constant supervision of the cell.

28.     The Defendants further knew that they lacked the ability to hear what was going on inside the cells and would not hear major crises including homicides, unless they remained in close proximity and employed direct surveillance. Defendants failed to look in on Cell 2 for at least one hour, during which time Mr. Gage was fatally beaten.

29.     The Defendants knowingly failed to maintain direct visual or auditory contact with inmates in East Satellite, Q-Pod, which housed Mr. Gage and Mr. Trojanowski in Cell 2, both inmates with observable mental health issues..

30.     The Defendants have an affirmative duty to protect inmates from present and continuing harm to ensure them adequate shelter and medical care.

31.     At all material times, Defendant Breonna Thompson, and Pottawatomie County Public Safety Center has an obligation to the citizens of Pottawatomie County to maintain a Safety Center that provides inmates protection from cruel and unusual punishment.

32.     On April 12, 2022, inmate Trojanowski was charged in the district court of

Pottawatomie County Case No. CF-2022-00145 with Count 1; Murder in the second degree.

33.     On April 13, 2022, Counsel for inmate Trojanowski filed an application for the determination of competency yet again. It was alleged that he: "is unable to appreciate the nature of the charges made against him/her;" and "is unable to consult with his/her attorney and rationally assist in the preparation of the defense of him/her."

34.     The (PCPSCT) had notice that inmate Trojanowski was in need of mental health treatment, as observed and as of record in the district court. Mr. Trojanowski was not properly segregated from other inmates. He was not placed in an area where he could be monitored by the staff pending proper mental health evaluation. This despite the fact he was in jail for a violent attack on a police officer.

35.     In this case, John/Jane Doe did not exercise the diligence required to ensure the safety of Plaintiff.  Prison and jail officials, as well as the municipal entities that employ them, have "a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity." *Berry v. City of Muskogee,* 900 F.2d 1489, 1499 (10th Cir.1990).

36.     The Medical Examiner's report identified Mr. Gage's cause of death as homicide.

37.     The death of Mr. Gage was caused by a disregard of his safety and was deliberately indifferent and a violation of due process.

38.     The Pottawatomie County Public Safety Center had a duty to protect Mr. Gage from a known violent, and mentally ill detainee. The agency failed to prevent a substantial risk of harm to Mr. Gage and violated his Eight Amendment rights.

39.     There is clear and convincing evidence of deliberate indifference, failure to protect, and medical incompetence rising to the level of a Fourteenth Amendment violation.

40.     In sum, Defendants were aware of a perpetual pattern of preventable in custody

deaths caused the PCPSCT's systemic and wide-ranging misconduct, negligence and failures.

**First Cause of Action – Fourteenth Amendment Deliberate Indifference  (Monell) –
Intake, Classification, and Housing
42 U.S.C. § 1983**

41.     Plaintiff recapitulates and incorporates all material allegations in paragraphs one through forty (1 – 40), by reference herein.

42.     PCPSCT Twas acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as deputies and employees of PCPSCT. One of the most important aspects of a detention facility is intake classification and housing.  All detainees should be assessed by a clinician in order to determine each inmates needs and to make a rational and objective placement under the classification process of the facility.

43.     PCPSCT, by and through its employees and agents, acted pursuant to the following official policies, or widespread or longstanding practices or customs of PCPSCT:

    a.   Failing to recognize hen a detainee has serious medical needs;

    b.   Failing o communicatee detainees' medical needs between medical staff and detention officers;

    c.   Providing insufficient medical care to detainees;

    d.   Failing to transfer detainees to the hospital when medically necessary;

    e.   Failing to respond properly or timely to serious medical needs of detainees;

    f.   Failing to conduct timely safety checks; and,

    g.   Failing to meet accepted community standards of care with respect to medical care of detainees.

44.     It is a fundamental principle of operating a detention facility that an objective classification system be implemented. The Oklahoma Administrative Code, at Section 310:370-5-

5(3)(6) provides the following, in pertinent part:

> . . .(3) Inmates considered to be a threat to other inmates or staff shall be housed separately from other inmates for the following reasons:
>
> (i)   Inmate's past criminal history'
> (ii)  The nature and severity of the charges pending against the inmate;
> (iii) Inmate's behavior while in the facility; and
> (iv)  Other relevant reasons as directed by the administrator
>
> ***
>
> (6) Inmates who appear to have a significant medical or psychiatric problem may be separated from other inmates.

45.    Defendants failed to provide proper medical care to Mr. Gage, by housing him in the general population unit instead of the Medical Ward. This failure is especially concerning considering Mr. Gage was arrested at a long-term nursing care facility. Such failure is in violation of § 1983 and demonstrates deliberate indifference to Mr. Gage's medical needs.

46.    Defendants failed to provide Mr. Gage with proper shelter to ensure his personal safety, failing to follow state law with regard to the classification of inmates and housing a physically and mentally unwell senior jailed on a bench warrant for missing court, with a violent felon demonstrating significant mental health issues.

47.    PCPSCT knew of a substantial risk that its policies were inadequate to prevent violations of law by its employees and agents. PCPSCT was deliberately indifferent to this risk and the well-documented history of widespread unconstitutional acts by employees and agents at PCPSCT. Yet, PCPSCT failed to set forth appropriate policies regarding the treatment of detainees.

48.    Defendants' conduct was an actual and proximate cause of Mr. Gage's pain, suffering, and death, which were direct and foreseeable results of Defendants' conduct.

49.     PCPSCT is liable for the conduct of the individual defendants who were acting within the scope of their employment with PCPSCT.

50.     PCPSCT is also liable in that Mr. Gage's death was also a result of a failure to train employees to properly evaluate the health of and risks to detainees at intake and while in custody, to determine proper and adequate courses of treatment for detainees in need of medical treatment and summon and provide adequate medical care when necessary. PCPSCT knew its failure to adequately train its staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would deprive detainees of constitutionally protected rights and result in additional deaths. PCPSCT was deliberately indifferent to the rights of individuals in its custody and care as evidenced by their knowledge of disparately high rates of in-custody deaths, systemic failures, and the fact that the individual detention officers and medical providers who the failed to properly train would come into contact with detainees. The inadequacy of PCPSCT's training actually caused Mr. Gage's constitutional deprivations.

51.     Defendants breached their duty to Mr. Gage and demonstrated a reckless disregard of the excessive risk to the health and safety of Mr. Gage, in violation of his Fourteenth Amendment rights.

52.     Defendants were responsible for the proper screening of Blake Trojanowski, for his mental illness and danger to himself and others upon his intake and continued evaluation while a pretrial detainee.  Said information is available from court records, officers and staff, based on their direct contact and communications with Trojanowski, who was visibly mentally unwell.

53.     PCPSCT is vicariously liable for the conduct of is employees, agents, and contractors who were acting within the scope of their employment. Breonna and Bobby Thompson and Brad Baney failed to enact new and different policies despite their knowledge of woefully

inadequate care of past detainees and a high rate of in-custody deaths at PCPSC.

54.    Defendants  were intentionally indifferent to the risk and the well-recognized history of the widespread unconstitutional acts  by employees and agents at the PCPSCT.

55.    Defendants failed to set forth appropriate policies regarding the treatment of detainees.

56.    Defendants are liable for the death of Mr. Jerry Gage due to the failure to train employees and properly evaluate the health of detainees during the intake process.

57.    PCPSCT is also liable based on its ratification and approval of the constitutional, statutory, and other law violations alleged in this Complaint.

58.    Defendants' deliberate actions against Mr. Gage as expressed above are the actual and proximate cause of his assault, injuries, and resulting death.

59.    PCPSCT's actions and omissions actually and proximately caused Plaintiff's economic and non-economic damage including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support for which Plaintiff seeks compensatory damages. Plaintiff also seeks punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Mr. Gage's constitutional rights.

### Second Cause of Action-Negligence and Wrongful Death
### Claim actionable under the Fourteenth Amendment
### 42 U.S.C. § 1983

60.    Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through fifty-nine (59), by reference herein.

61.    Defendants deprived Mr. Gage of the rights and privileges afforded to him under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in violation of

42 U.S.C., § 1983.

62.     Defendants have an affirmative duty to protect inmates from present and continuing harm and to ensure they receive adequate food, clothing, shelter, and medical care.

63.     At all material times herein, Defendant Breonna Thompson and PCPSCT had an obligation to the citizens of Pottawatomie County to maintain a jail that provided inmates protection from cruel and unusual punishment.

64.     Defendant Breonna Thompson had a duty to establish training requirements to comply with state and federal standards. Defendant Breonna Thompson is also responsible for the administration and supervisory control involving the operations of (PCPSCT). Defendant Breonna Thompson is also responsible for a.) reviewing that appropriate disciplinary actions taken were in compliance with established procedures, b.) overseeing that an inmate's medical needs were met and were in compliance with established policies; and c.) reviewing and approving all incident reports and forwarding accurate and completed reports to the Sheriff with appropriate recommendations. However, based on the investigations by other agencies, Breonna Thompson has failed to recognize the actions of any of her employees concerning the death of Mr. Gage.

65.     At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that inmates detained at PCPSCT were provided protection against unreasonable seizures, assault and battery, and cruel and unusual punishment.

66.     At all material times herein, Defendants had an obligation to the citizens of Pottawatomie County to ensure that the serious health needs of inmates detained at PCPSCT were timely and adequately addressed.

67.     Defendants' failure to adequately attend to Mr. Trojanowski's serious psychiatric condition resulted in him assaulting and battering Mr. Gage, inflicting severe injuries, which

caused his tragic death.

68.     Defendants' conduct evinced a deliberate indifference to the safety of Mr. Gage.

69.     Defendants knew, or should have known, that failure to follow proper protocol in dealing with psychiatric inmates and/or detainees could result in serious risk to the health and safety of others and in this case, this failure was the direct cause of Mr. Gage's death.

70.     Defendants exhibited a reckless disregard for the safety and welfare of the inmates detained at (PCPSCT) when they placed Mr. Gage in a cell with a known violent, and mentally ill detainee.

71.     Defendants' conduct violated clearly established constitutional rights which a reasonable person in his position would have known.

72.     Defendants had an obligation to ensure that all detainees at (PCPSCT) receive proper reasonable medical care, shelter, and personal safety.

73.     That in failing to take any action to protect Mr. Gage, each of the Defendants acted with deliberate indifference to the safety and Constitutional rights of Plaintiff's decedent.

74.     Defendants failed to implement minimally sufficient policies and procedures to protect inmates from harm. Defendants filed to appropriately train and supervise staff regarding identification and handling of detainees at risk of harm.

75.     That Mr. Gage did not receive reasonable medical care.

76.     That Mr. Gage did not receive reasonable and safe shelter.

77.     That the above acts or omissions by Defendants are sufficiently harmful to evince a deliberate indifference to Mr. Gage's shelter, safety, and medical needs.

78.     That the above acts or omissions by Defendants resulted in Mr. Gage suffering

unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Eighth Amendment.

79.     That the above acts or omissions deprived Mr. Gage of the minimal civilized measure of life's necessities.

80.     All of the foregoing was done with reckless disregard of Mr. Gage's constitutional rights.

81.     That the conduct at issue above also constitutes reckless, intentional, and life-threatening conduct that resulted in Mr. Gage's death and entitle Plaintiff to an award of punitive damages.

82.     At all times mentioned in this Complaint, Defendants had a duty to provide a reasonably safe and secure environment for Jerry Dayle Gage, and negligently failed to perform that duty, including but not limited to: failing to provide adequate security and safety for Plaintiff, failing to supervise detainees under its care and custody; failing to classify detainees and offenders properly; failing to adequately inspect, operate, maintain, and control the activities of detainees and offenders under their care and custody; failing to respond adequately to violent assaults on the premises; and failing to provide adequate and timely emergency medical care, transportation and attention when needed.

83.     As a direct and proximate result of the defendants conduct, Mr. Gage experienced physical pain, severe emotional distress, mental anguish, loss of life and the damages alleged herein.

84.     Mr. Gage suffered an unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Eighth Amendment.

85.     Defendants breach of duty or care and failure to implement appropriate

classification, placement and supervision of the jail cells created an unsafe environment that ultimately caused the death of Mr. Gage.

86.     As a result of Defendants' negligence, Plaintiff's decedent lost his life and is entitled to monetary damages, therefore and seeks economic and non-economic damages in an amount to be proven, including compensatory damages which include, but are not limited to, any coroner's fees and funeral expenses, emotional distress, loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

### Third Cause of Action-Negligence Negligent Training and Supervision

87.     Plaintiff recapitulates and incorporates all material allegations in paragraphs one (1) through eighty-six (86), by reference herein.

88.     PCPSCT had a duty to use reasonable care in the training and supervision of its employees, deputies, sworn staff, contractors, and agents.

89.     PCPSCT had a duty to properly train and supervise its employees to sue reasonable care in evaluating the health of  and risks to detainees and determining the proper and adequate course of treatment for detainees in need of medical treatment.

90.     PCPSCT breached its duty of care such that Mr. Gage suffered fatal injury at the hands of a mentally ill inmate he should never have been housed with. Particularly, considering Mr. Gage's own medical and mental health needs.

91.     PCPSCTT is vicariously liable for the conduct of individual defendants.

92.     As a direct, proximate, and foreseeable result of PCPSCTT's breach of duty of care, decedent suffered damages in an amount according to proof at the time of trial, including compensatory damages for MR. Gage's pain and suffering prior to his death.

**Fourth Cause of Action – Fourteenth Amendment Substantive Due Process (Monell)**
**42 U.S.C. § 1983**

93.     Plaintiff recapitulates and incorporates all material allegations in paragraphs one through ninety-two (1 – 92), by reference herein.

94.     PCPSCT was acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as employees of PCPSCT.

95.     As alleged above, PCPSCT, by and through its employees and agents, deprived Russell Gage of his rights to companionship and society with his father, Jerry Gage, in violation of the Fourteenth Amendment.

96.     PCPSCT's actions and failures to act actually and proximately caused Plaintiff's economic and non-economic damages including loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiff seeks compensatory damages.

97.     Plaintiff also seeks punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Jerry Gage's constitutional rights.

**RELIEF REQUESTED**

**WHEREFORE,** based on the foregoing, Plaintiff prays that this Court grant him the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

**ATTORNEY'S LIEN CLAIMED**

Respectfully Submitted,

/s *Ronald Kelly*

_____

RONALD "SKIP" KELLY, OBA # 4976
205 NW 63rd St., Ste. 150
Oklahoma City, OK 73116
Phone: (405) 235-1976
Fax: (405) 286-6316
Email: kellyron01@yahoo.com
ATTORNEY FOR PLAINTIFF